ROGERS *v.* JOHNSON, TREAS.

*Assessments—Defined—Power to assess unfettered by constitutional limitation—Exercise of power may be avoided where assessment tinctured with fraud—Property owner protected against confiscation under color of assessment—Section 1, Article XIX, Ohio Constitution—Intercounty highway improvements—Statutory method of assessment fair and reasonable—Section 1214, General Code—Petition to enjoin assessment for unconstitutionality—Judgment of court not substituted for commissioners' as to benefits—Benefits not determined by use of land—Assessment sustained although benefit not equal thereto, when.*

1. "Assessments" are species of tax levied and apportioned by the General Assembly under its general police power.
2. Power to levy and apportion assessments is not subject to any specific constitutional limitation under Article I,

Section 19, and Article XIII, Section 6, Constitution, or otherwise.

3. Levying and apportioning special assessments may be inquired into and avoided by courts where tinctured with fraud.

4. Article I, Section 19, Constitution, though not limiting legislative power to assess for public improvements, is protection against actual confiscation under color of assessment statute.

5. Section 1214, General Code, providing assessment district for road improvement should include all land within one mile of improvement to be assessed at 10 per cent. of cost, district on each side of road being divided into four zones each a quarter of a mile wide, to be assessed in diminishing proportion as they are severally distant, affords fair and reasonable method of assessment.

6. Petition to enjoin enforcement of assessment for road improvement, on ground that it is unconstitutional, does not authorize court to substitute its judgment as to amount of benefits for that of commissioners acting within statute providing fair and reasonable method of assessment.

7. Benefits accruing to land from road improvement are not determinable by owner's use of land, nor by any use to which particular owner could devote it, but are merely matter of forecast and estimate.

8. If assessing powers are governed by fair and reasonable rule of apportionment of assessments for benefit to property and rule is fairly followed, assessment against particular property will not be disturbed by court even though it appear that benefit did not equal assessment.

(Decided May 7, 1926.)

APPEAL:    Court of Appeals for Athens county.

*Mr. Emmett Keenan, Messrs. Woolley & Rowland,* and *Mr. C. E. Peoples,* for plaintiff.

*Mr. R. W. Finsterwald,* prosecuting attorney, and *Mr. A. B. Wells,* for defendant.

MAUCK, P. J. By an amended petition the plaintiff seeks to enjoin the treasurer of Athens county from collecting an assessment made on his two tracts of land in that county for the improvement of an intercounty highway. It is alleged that the improvement cost about $54,000 per mile; that the county commissioners tentatively assessed 10 per cent. of that expense upon the real estate lying within one mile of either side of the improved road; that thereafter the plaintiff filed his objection to said tentative assessment, setting forth three objections: (1) That the assessment is greater than the benefits accruing to the plaintiff's lands; (2) that the assessment should have been extended to all lands with 1½ miles of either side of the highway; (3) that the assessment is confiscatory. He pleads that in support of his objection he appeared before the commissioners and produced evidence in support of his contention, but that the commissioners notwithstanding that fact confirmed the tentative assessment. He says that the treasurer is now threatening to collect the assessment, and that the confirmation of such assessment is "unlawful, unauthorized, and in contravention of the Constitution of the state of Ohio, for the reason that no special benefit or benefits whatever have accrued to plaintiff or his said premises by reason of said improvement of said highway in the manner aforesaid." He further pleads that because the property is located in a strictly agricultural and grazing community, five miles from Athens, and separated therefrom by a high hill which renders his property unavailable for residence or allotment purposes, and be-

cause of the great volume of rapidly moving traffic on the improved highway, and the danger to life and property resulting therefrom, plaintiff's real estate is thereby rendered less valuable than before the improvement was made.

Issue was joined upon this amended petition, and trial had. The issue made is that the assessment levied violates some undesignated provision of the Constitution because, it is claimed, the assessment against plaintiff's land exceeds the benefit conferred by the improvement.

There is strong testimony in the record, consisting of the opinions of worthy citizens, indicating that the assessment of $973.16 levied against plaintiff's 106 acres is greater than the benefits that have accrued to him.

To ascertain the extent to which a court of equity may afford relief against an assessment claimed to violate some constitutional right seems to necessitate a review of the authorities bearing upon that question. That they in the main relate to municipal assessments does not affect the principles involved.

Under the first Constitution of this state, assessments were not referred to, but this method of making public improvements was then the common practice of the municipal corporations of this state. In the Constitution of 1851 assessments were recognized and referred to, but were neither defined, limited, nor regulated. Section 6, Article XIII, provided merely that the General Assembly should provide for restricting the municipal power of making assessments, indicating that as there were no constitutional restrictions, such as prevailed in

some states, there ought to be legislative restrictions imposed in this state by statute.

In *Hill* v. *Higdon*, 5 Ohio St., 243, 67 Am. Dec., 289, an owner of property resisted an assessment and questioned the statute under which it was made. Judge Ranney, in writing the opinion, sustained the statute, and in distinguishing taxes from assessments said:

"But in the exercise of the power of assessment, legislative discretion in apportioning the burden according to benefits, is left as broad and unfettered as under the Constitution of 1802. The last of these sections contemplates a delegation of the power to municipal corporations, and imposes upon the Legislature the duty (as yet very imperfectly performed) of so restricting its exercise as to prevent abuse. A failure to perform this duty, may be of very serious import, but lays no foundation for judicial correction."

Whether required or not by the case he was considering, Judge Ranney thus expressed the opinion that there were no constitutional limitations upon the power to levy assessments. This was followed and approved in *Reeves* v. *Treasurer of Wood County,* 8 Ohio St., 333, referred to later herein.

In *Northern Indiana Rd. Co.* v. *Connelly,* 10 Ohio St., 159, the railroad company sought to enjoin the collection of an assessment for a street improvement on the ground that its property would not be specially benefited by the improvement. The court said:

"But it is said that assessments, as distinguished from general taxation, rest solely upon the idea of

*equivalents,* a compensation proportioned to the special benefits derived from the improvement, and that in the case at bar, the railroad company is not, and in the nature of things cannot be, in any degree, benefited by the improvement. It is quite true that the right to impose such special taxes is based upon a presumed equivalent; but it by no means follows that there must be in fact such full equivalent in every instance, or that its absence will render the assessment invalid. * * * The mode adopted by the council becomes the statutory equivalent for the benefits conferred, although in fact the burthen imposed may greatly preponderate. In such case, if no fraud intervene, and the assessment does not substantially exhaust the owner's interest in the land, his remedy would seem to be, to procure, *by a timely appeal to the city authorities,* a reduction of the special assessment and its imposition, in whole or in part, upon the public at large.''

In *Maloy* v. *City of Marietta,* 11 Ohio St., 636, the court was considering an assessment made under a statute which it was claimed was invalid and unconstitutional because the statute contained no restrictions upon the power of assessment. The court held that the statute did in fact impose some restrictions, but that the imposition of such restrictions was a legislative duty only, and, in effect, that the power of assessment was unrestricted except so far as the Legislature had otherwise determined. The same principle was reasserted and emphasized in *City of Cleveland* v. *Wick,* 18 Ohio St., 303.

Until 1879 it may be said to have been the

recognized rule that there was no constitutional limitation in this state on the power of municipal corporations to levy assessments, nor any limitations except such as the Legislature imposed by virtue of Section 6, Article XIII. No other provision of the Constitution was deemed available to one who felt that his property was being taken from him because the assessments thereon were in excess of the benefits conferred by such assessment. The attitude of our courts in this respect was identical with that of courts of New York and other states with similar constitutional provisions. In that year, however, was decided the case of *Chamberlain* v. *City of Cleveland,* 34 Ohio St., 551, wherein the court to some extent might seem to have impliedly overruled *Hill* v. *Higdon,* 5 Ohio St., 243, 67 Am. Dec., 289. The opinion reads:

"After all the care that has been thus taken to restrict the powers of general taxation, and to cause the burdens created by it to rest uniformly and equally upon all, it would be astonishing to find that dangers incident to the assessment mode of taxation, which are very great, had been entirely overlooked in framing and adopting the constitution, and that the powers of this mode of taxation are subject to no limitations or restrictions except the discretion of the general assembly. If such a discretionary power is vested in the general assembly, it is very clear that it may be used to subvert Section 19 of the bill of rights, and private property will not be inviolate, but at the mercy of a discretion under which it may be taken from the owner without compensation, and be gratuitously given to the public."

And further the court quoted from *Hammett* v. *Philadelphia,* 65 Pa., 146, 3 Am. Rep., 615, to the effect that such assessments "can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits."

The court thereby reached the conclusion that Section 19, Article I, of the Constitution, contemplated that the property owner should realize in benefits the equivalent of the amount paid by him in the way of assessments. But the court seemed to be further of the opinion that only in unusual cases could a judicial question arise as to the amount of benefits conferred upon the owner by the improvement. The court said:

"A majority of the court think that where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, *in the absence of fraud,* is final and conclusive, unless modified by the council before the final confirmation."

Then came *Parsons* v. *City of Columbus,* 50 Ohio St., 460, 34 N. E., 677. In the opinion in the *Parsons case* the court strongly implied that there are no limitations upon the power of the municipal corporation to levy assessments except such as the Legislature might fix under Section 6, Article XIII. It must be observed, however, that that case contained no facts inviting the court to pass upon the application of Section 19 of the Bill of Rights, for it did not appear that the assessment levied in that case was claimed to be in excess of the benefits conferred.

A new view began to take form after the Supreme Court of the United States in 1898 decided the case of *Norwood* v. *Baker,* 172 U. S., 269, 19 S. Ct., 187, 43 L. Ed., 443, involving an assessment made under the Ohio statutes. There was wide disagreement for a while as to just what the effect of this opinion was. Various views are well developed and the opinion well analyzed in 25 Ruling Case Law, 148. It is sufficient for our purposes to observe that the opinion brought to the front the constitutional right of the owner of the property to hold the same inviolate until he should be compensated for its taking, and in that case an assessment was enjoined apparently because the court found that under the statute then in operation the assessing powers could not have passed upon the question as to whether the benefits equaled the assessments, and because the result showed that the owner's property was actually being taken without any compensation.

Following the *Norwood case* came *Schroder* v. *Overman,* 61 Ohio St., 1, 55 N. E., 158, 47 L. R. A., 156, and *Walsh* v. *Barron, Treas.,* 61 Ohio St., 15, 55 N. E., 164, 76 Am. St. Rep., 354. In the *Schroder case* an injunction against an assessment was refused because the court affirmatively found the plaintiff to be benefited beyond the amount of the assessment, while in the *Walsh case* it held an assessment invalid because on demurrer it was admitted that the assessment not only exceeded the benefits resulting from the improvement but actually exceeded the value of the whole property as improved, and was, consequently, actually confiscatory. After the decision that the

assessment in the *Walsh case* was invalid, the case was remanded to the circuit court, where additional pleadings were filed and the case tried out before that court as to just what extent the assessments in that case, admittedly confiscatory, did exceed the actual benefits accruing to the property owner. This proceeding was sustained in *Walsh* v. *Sims, Treas.*, 65 Ohio St., 211, 62 N. E., 120, the Supreme Court holding that after it had been judicially determined that the assessment made by the city authorities substantially exceeded the special benefits conferred the trial court might refuse to set aside the assessment *in toto* and order a new assessment, and might retain the case and determine to what extent the assessment might be legal because compensated for by an equivalent in benefits. In considering the two opinions of the court in the *Walsh cases* it cannot be overlooked that the assessments were levied under what was known as the Taylor Law. That law in its beginning contained a provision that assessments should not exceed 25 per cent. of the value of the property to be assessed, but prior to the assessment in the *Walsh cases* that provision had been removed and there was no legislative rule limiting the amount of the assessments. The *Walsh cases,* therefore, cannot be said to have established any rule for judicial interposition in a case where the Legislature has provided a fixed and reasonable relation between the amount of the assessment and the value of the land supposed to be benefited, and the assessing authorities have conformed thereto.

Then followed *Cincinnati, Lebanon & Northern Ry. Co.* v. *City of Cincinnati*, 62 Ohio St., 465, 57

N. E., 229, 49 L. R. A., 566, tersely announcing in the first paragraph of the syllabus: "Section 19 of Article I of the Constitution is a limitation upon Section 6 of Article XIII as to the power of assessments."

This doctrine was reaffirmed in *City of Dayton* v. *Bauman,* 66 Ohio St., 379, 64 N. E., 433. We need not stop to inquire the effect of these explicit holdings that Section 19 of the Bill of Rights directly operated on the power to assess, for they have now been expressly overruled. *State ex rel. Shafer* v. *Otter, County Surveyor,* 106 Ohio St., 415, 140 N. E., 399. In this case the court discusses some of the opinions already referred to herein and says:

"It will thus be seen that this court in the past has not consistently adhered to the same theory in its construction of Section 19, Article I, and Section 6, Article XIII, and their relation to each other; that up to the year 1900 it consistently held that the two sections were independent of each other and that the one was not a limitation upon the other; that in the year 1900, in the case of *Railway Co.* v. *Cincinnati, supra,* it for the first time adopted the construction that Section 19, Article I, was a limitation upon Section 6, Article XIII. The doctrine of that case was specifically approved and followed in 1902 in the case of *Dayton* v. *Bauman, supra.*"

The court concludes by expressly overruling the principle announced in *Railway Co.* v. *City of Cincinnati* and *Dayton* v. *Bauman, supra.* Judge Robinson says in the opinion in substance that Section 19, Article I, is not a limitation upon either

Section 6, Article XIII, of the Constitution, upon the power of the General Assembly to enact assessing laws, and points out the injustices resulting from an attempt to so invoke Section 19 of Article I. He cites with approval *Reeves* v. *Treasurer of Wood County,* 8 Ohio St., 333, in which case *Hill* v. *Higdon,* 5 Ohio St., 243, 67 Am. Dec., 289, was followed to the effect that in levying assessments under the Constitution of 1851 the Legislature might operate with the same unfettered hand that it could under the Constitution of 1802. Now it appears that under the Constitution of 1802 an assessment was merely a special tax, and in this connection the Supreme Court, in *Scovill* v. *City of Cleveland,* 1 Ohio St., 126, said at page 138:

"This unlimited power to tax, necessarily involves the right to designate the property upon which it is to be levied—in other words, to apportion the tax. And except in cases where the proceeding is merely colorable, and it is really and substantially an exercise of the right of eminent domain, the judicial tribunals cannot interfere with the legislative discretion, however onerous it may be."

We think that after the Otter opinion in 1922, 106 Ohio St., 415, 140 N. E., 399, it may be fairly said that the state of the constitutional question was this: Assessments are a species of tax. The power of the General Assembly to levy and apportion them resides in the general police power. This power is as unfettered under the present Constitution as under the original Constitution, and under neither Constitution was there nor is there any specific limitation upon the power to assess.

The exercise of the power, however, by the General Assembly, or the application of it in a particular instance, may be inquired into and avoided by the courts, where the assessment is tinctured with fraud. *Chamberlain* v. *City of Cleveland, supra.* While Section 19, Article I, is not a limitation on the legislative power to assess for public improvements, it is an available protection in a court as against any actual confiscation of property, whether made under color of an assessment statute or otherwise. It was probably with this view in mind that the court in *Bashore* v. *Brown, Treas.*, 108 Ohio St., 18, 140 N. E., 489, and *City of Cuyahoga Falls* v. *Beck*, 110 Ohio St., 82, 143 N. E., 661, while it remitted the complaining property owner to his statutory remedy at law, did not deny that the equitable remedy of injunction might be invoked under some circumstances; those circumstances, as we have already shown, being either where fraud intervened or absolute confiscation resulted.

Such is now the rule in the Supreme Court of the United States. In *Branson, Sheriff,* v. *Bush, Receiver,* 251 U. S., 182, 40 S. Ct., 113, 64 L. Ed., 215, restating the principle announced in *Phillip Wagner, Inc.,* v. *Leser,* 239 U. S., 207, 36 S. Ct., 66, 60 L. Ed., 230, it was held that the judicial power could only be exercised to enjoin an assessment regularly made where it is "arbitrary and wholly unwarranted," "a flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property."

In the instant case the assessment complained of was made under the provisions of Section 1214, General Code. Under that section as it then

read, the assessment district included all the land lying within one mile of the improvement. The amount specially assessed was 10 per cent. of the cost of the improvement, the remaining 90 per cent, being borne by the general public. The assessing district on each side of the road was divided into four zones, each a quarter of a mile in width, and the several zones were assessed in a diminishing proportion as they were severally distant from the improvement. The assessments within each zone were then apportioned among the several properties in such zone according to the tax valuation of the several properties. All the assessments were required by the section mentioned to be within 33 per cent. of the tax valuation of the lands. The instant assessment was in complete. conformity to the section referred to. The statute itself furnishes a fair and reasonable method of assessment, and while, in the case at bar, where the plaintiff's lands seem to be poor and to lie in two ribbons along the improvement, bringing all of his property within the first zone, the assessment is high and burdensome, it is still within the limitations fixed by the statute.

The challenge made by the petition that the assessment is unconstitutional does not authorize this court to substitute its judgment as to the amount of benefits accruing to the land for the judgment of the commissioners acting under the statute referred to. While the evidence might be said to show clearly that the improvement does not benefit the land in question more than, nor as much as, a less expensive and different kind of improvement would have benefited it, we would

be bound to hold, if it were a judicial question, that the property has been benefited by the improvement, when comparison is made with the old turnpike as it was at the time of the new improvement, which is the only test we could apply. Now the extent of the benefits accruing to the plaintiff's land is uncertain. The benefits are not determinable by the use to which the plaintiff puts the land, nor even by any use to which a particular owner could devote it. In *Louisville & Nashville Rd. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S., 430, at page 433, 25 S. Ct., 466, 467 (49 L. Ed., 819), Mr. Justice Holmes, in considering a similar situation, said:

"There is a look of logic when it is said that special assessments are founded on special benefits and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law."

Further, at page 434 (25 S. Ct., 467), the learned justice said: "A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least

if its present and probable use be taken into account. If that possibility does not invalidate the act it would be surprising if the corresponding fact should invalidate an assessment. Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things."

Of all the authorities examined by us, we find nowhere a better assembly of authority or a better analysis of the controlling principles than in *Atlantic Coast Line Rd. Co.* v. *City of Gainesville,* 83 Fla., 275, 91 So., 118, 29 A. L. R., 668, where the rule is laid down in substance that if the assessing powers are governed by a fair and reasonable rule of apportionment, and such rule is fairly followed, an assessment against a particular property will not be disturbed by the courts. And, as we have already pointed out, in the instant case the rule is fair and reasonable and no complaint is made that it was unfairly applied.

Page and Jones on Taxation by Assessments points out, Section 549, that special assessments rest upon the theory of special benefits, and says (Section 553) that while there are some limits to legislative discretion in imposing them, these limits are not clearly established, and the question of benefits is not a judicial one "unless the court can plainly see that no benefit can exist and this absence of benefit is so clear as to admit of no dispute or controversy by evidence."

We are therefore bound to, and do, dismiss the petition of the plaintiff.

*Petition dismissed.*

SAYRE and MIDDLETON, JJ., concur.